JAMES B. HAYNES, RESPONDENT, *v.* JAMES H. RUDD, APPELLANT.

*Note given to compound a felony — when the maker may recover what he has been compelled to pay to a bona fide holder thereof.*

Where the maker of a negotiable promissory note, given to compound a felony, is compelled to pay the same to a *bona fide* holder, to whom it has been transferred by the payee for value and before maturity, such payment is not to be regarded as a voluntary one, and the maker may recover the amount so paid from the payee.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff.

The action was tried at the Wayne circuit, and the jury gave a verdict for the plaintiff.

The plaintiff's son had been in the employ of the defendant as clerk, and it was claimed that he had feloniously taken and carried away money from his employer. A criminal prosecution was threatened, and to prevent it plaintiff gave his note for $250 to

his wife, who indorsed it in such a manner as to charge her separate estate therewith, and delivered it to the defendant, who transferred it, before it was due, to a purchaser in good faith, to whom the plaintiff was obliged to pay it.

*T. W. Collins*, for the appellant. An agreement to compound a felony is immoral and illegal. It involves criminality and moral turpitude, and all the parties thereto are equally guilty before the law, and are regarded as *in pari delicto*. (*Daimouth* v. *Bennett*, 15 Barb., 541; *Conderman* v. *Hicks*, 3 Lans., 108.) When the parties are *in pari delicto*, neither can have any remedy against the other ; nor can money paid by such a party upon a contract involving criminality and moral turpitude be reclaimed in law or in equity. (*Burt* v. *Place*, 6 Cow., 431; *Perkins* v. *Savage*, 15 Wend., 412; *Nellis* v. *Clark*, 20 id., 24; *Daimouth* v. *Bennett*, 15 Barb., 541; *Sharp* v. *Wright*, 35 id., 236; *Hill* v. *Northrup*, 4 N. Y. S. C. Rep., 120; id., 300; *Woodworth* v. *Bennett*, 43 N. Y., 273; *Knowlton* v. *Congress and Empire Spring Co.*, 57 id., 518; *Loomis* v. *Cline*, 4 Barb., 453; *Gilmore* v. *Thompson*, 49 How., 198.)

*Clarke Mason*, for the respondent.

HARDIN, J. :

The jury have found that the plaintiff made his negotiable note on time, conditioned to pay the defendant $250 to compound a crime, and that the defendant, before it was due, for value transferred it to a *bona fide* holder, and that the plaintiff was compelled to pay it to the holder. The plaintiff did not *voluntarily* pay the money to get up his note. He had no defence against it that would avail him against a *bona fide* holder for value without notice of its origin and consideration. (*Grines* v. *Hellenbrand*, 6 N. Y. S. C. R. [T. & C.], 620; *Hill* v. *Northrup*, 4 id., 120.) It would have been otherwise if non-negotiable. (*Conderman* v. *Hicks*, 3 Lansing, 111.) The act of the defendant, in transferring it to the *bona fide* holder, was such as to compel the payment of it by the plaintiff.

True, he had made the note, and in and by it he promised to pay the money to the payee or the subsequent holder. The payee

had agreed to violate the statute against receiving anything "to compound or conceal any offence." (2 R. S., 714 [Edm. ed.], § 12.) But, so long as it remained in the hands of the payee, it was a void promise. The alleged consideration was a defence of which he could avail himself. There was no payment — no parting with money to the payee. Clearly, if the plaintiff had parted with money *voluntarily* to the amount of the note, he could not have maintained an action against the payee to recover it back. (*Daimouth* v. *Bennett*, 15 Barb., 541; *Sharp* v. *Wright*, 35 id., 236; *Gray* v. *Hook* 4 Comst., 449; *Knowlton* v. *Congress and Empire Spring Co.*, 57 N. Y., 518.) The fact that it was a voluntary payment, would have defeated a recovery under the maxim of *potior conditio defendentis*. But when the note was put by the defendant into the hands of the *bona fide* holder that placed it beyond the power of the maker of the note to refuse to pay it, and as he did not pay it of his own *volition*, but because the law compelled the payment thereof, he was not a party willingly parting with a consideration based upon an illegal promise. (*Gilmour* v. *Thompson*, 49 How., 200.)

The case of *Loomis* v. *Cline* (4 Barb., 453) is authority for saying that the note was void in the hands of the payee, and that the court would interfere and restrain its circulation and transfer, and to prevent its passing into the hands of a *bona fide* holder, where its payment would be coerced by the law, and that the court would order it delivered up by the payee and canceled. "His assent, under the fear of prosecution and imprisonment, was not of that voluntary character which gives life and efficacy to the form of a contract." (Id., 455.)

The case of *Tracy* v. *Talmage* (14 N. Y., 162) is cited, but we do not see that it aids in the solution of the question presented here. If it was held that the mere knowledge that property (bonds) was to be used for an unauthorized and illegal purpose, was not a defence to an action for the purchase-price thereof.

In the case of *Hull* v. *Rugels et al.* (56 N. Y., 425), it was approved, and the court also held that when the party making sale of property, to be used in violation of law, had so arranged it that the violation of the law was facilitated, a recovery could not be had, and, therefore, that the action for prize candies put up

so as to facilitate a violation of the law against raffling could not be upheld.

In *Oneida Bank* v. *Ontario Bank* (21 N. Y., 490) it was held that an action for money had and received would lie, although the post-dated certificates given, upon which the money was obtained, were prohibited and invalid.

The principle laid down in *Nellis* v. *Clark* (20 Wend., 24; *S. C.*, 4 Hill, 424, and other cases) that where a party has transferred his property to defraud his creditors he cannot maintain an action to recover back the property so transferred, is pressed upon us as decisive of this case.

But in that and similar cases the condition of the defendant is held to be superior, and that the court will not aid a party who has been guilty of a wrong in *voluntarily* parting with his property or money.

The case in *Woodworth* v. *Bennett* (43 N. Y., 273) is cited where four parties had formed a conspiracy to violate the canal laws, and out of that conspiracy one had received $400 ; it was held that one of the four could not have a recovery for his fourth share, as the action could not be sustained without the aid of the illegal agreement to obtain the money by means of the confederation or illegal firm, and, therefore, the court would not allow a recovery which would assert the illegal contract by means of which the money was obtained.

*In the case in hand the party does not seek to support his action by adopting and affirming the illegal corrupt contract* to pay the money.

It is rather a disaffirmance of it, a disregard of the void agreement to pay, a renunciation of it, and of the promise contained in the note, standing up and saying although I unlawfully agreed, and unlawfully promised in my note, I did not pay my money away *voluntarily ;* but the defendant, by means of the transfer of my note, coerced and compelled me to pay away my money, which I now ask him to return by restoring to me in damages its equivalent.

He does not meet my claim by a good consideration as the aliment of my promise, and, therefore, he cannot stand on my unlawful agreement, and my equally unlawful note.

In my *locus pœnitentiæ* I disaffirmed my unlawful contract. I have been coerced by moral duress to give a note, and been compulsorily made to pay it to a third party, and now I demand to be placed back where the duress took effect upon me.

Money paid upon a wager is recoverable per force of the statute; therefore, in such actions it is no answer to say it was *voluntarily* lost or parted with. But for the statute the *voluntary payment* would be a defence to a claim to recover it. (See 15 Barb., *supra*, and *Knowlton* v. *C. and E. Spring Co.*, *supra*, 57 N. Y.)

We must, therefore, yield our assent to *Gilmour* v. *Thompson* (49 How., 200, and the numerous cases there cited) upholding recoveries for money *involuntarily* paid upon notes given to secure payments, over and above the composition percentage, in violation of public policy, and in fraud of creditors, where such notes had passed before maturity into the hands of *bona fide* holders for value, and apply the principle laid down in these cases to the one here before us. (*Smith* v. *Eaff*, 2 M. & S., 160.)

The result at the circuit was in accordance with the views expressed above, and upon the force of the principles stated in the authorities referred to, we must sustain the recovery and affirm the judgment.

TALCOTT, P. J., and SMITH, J., concurred.

Judgment and order affirmed.