LEGG        *Per Curiam.*—The judgments are reversed with costs.
v.        Cause remanded, &c.
LEYMAN.
          *J. Law* and *O. H. Smith*, for the plaintiff.

          *S. Judah*, for the defendants.

---

### LEGG and Another *v.* LEYMAN and Another.

A deposition cannot be impeached by proving that a statement inconsistent with it had, before it was taken, been made by the deponent, unless the deposition show that the deponent had been asked, on his examination, whether he had made such statement.

In trespass *de bonis asportatis*, the plaintiff offered a deposition to prove that the property was his. The defendant, in order to show that the deponent was interested, offered to prove that he (the deponent) had sworn on a former trial that he 'had owned an interest in the property, and had sold it to the plaintiff. *Held*, that the evidence offered by the defendant was inadmissible.

*A.* being in *Illinois* bought there of *B.*, the owner, a certain fanning-mill which was in *C.*'s possession in this state. The buyer paid the price at the time of the sale and took the seller's order on *C.* for the mill. *Held*, that the sale, though actual possession was not given, passed the property in the mill to the buyer, and gave him a sufficient possession to maintain trespass against a person for taking it from *C.* after such sale.

*A.* having absconded, his creditors, *B.* and *C.*, pursued him, one of them saying on the way that *A.* had executed to him a forged note. *B.* and *C.* having overtaken *A.*, took him into a private room and told him he had violated the law, which he admitted. They also told him that if he would deliver to them a certain mare, and an order for a certain fanning-mill, in payment of their demands, they would give him up said note and let him go. *A.* complied, and *B.* and *C.* gave up the note. *Held*, that the order for the mill was not illegal.

*Wednesday,*    ERROR to the *Tippecanoe* Circuit Court.
*July 15.*

BLACKFORD, J.—Trespass against *Legg* and another for taking a fanning-mill. Plea, not guilty. Verdict and judgment for the plaintiffs.

The plaintiffs offered in evidence the deposition of one *Robinson*, which stated, *inter alia*, that the mill in question belonged to the plaintiffs. To impeach the deposition, the defendants offered to prove, that, previously to the taking of it, the deponent had stated, when a witness on a trial of this cause before a justice of the peace, that he, the deponent, was jointly concerned with the plaintiffs in the purchase of

the mill. The evidence thus offered by the defendants was rejected, and we think rightly. To authorize its admission, the deposition should have shown that the deponent had been asked, on his examination, whether he had made the statement which the defendants offered to prove he had made.

The said deposition was objected to, on the ground that the deponent was interested in establishing the plaintiffs' ownership of the mill. To sustain the objection, a witness was called to prove that the deponent had sworn on the trial before the justice, already referred to, that he had owned an interest in the mill, and had sold it to one of the plaintiffs. But supposing that such sale would prove the deponent to be interested, his former statements, though on oath, were not the best evidence of the facts. The deponent might have been called to prove them.

It appears that on the 27th or 28th of *October*, 1841, the plaintiffs bought the said mill in *Illinois* of one *Higgs* the owner, paid for it at the time, and took *Higgs's* order for it on one *Smiley* in this state, who had it in possession; that afterwards, on the 30th of the same month, the defendants took the mill from *Smiley*. This sale by *Higgs*, though actual possession was not given, passed the property in the mill to the plaintiffs, and gave them a sufficient possession to maintain the action.

The order for the mill is said to be illegal, on account of the manner in which it was obtained, but we do not think so. The following are the facts: *Higgs* having absconded from this state, the plaintiffs, his creditors, pursued him into *Illinois*. On the way, one of the plaintiffs said that *Higgs* had executed to him a forged note for 25 dollars. The plaintiffs having overtaken *Higgs*, took him into a private room and told him he had violated the law, which he admitted. They also told him, that if he would deliver to them a certain mare, and an order for the mill in question, in payment of their demands, they would give him up said note and let him go. *Higgs* complied, and the plaintiffs gave him up the note. This transaction is not like an agreement made in consideration of stifling or compounding a criminal prosecution. There was no agreement here not to prosecute for the alleged for-

May Term,
1846.

THE INDIANA
MUT. FIRE
INS. CO.
v.
CHAMBERLAIN.

gery. The case is somewhat similar to that of a person giving up a forged bill of exchange, knowing it to be forged, to the person who had forged it, in exchange for a genuine bill; and that has been held not to be unlawful. *Wallace* v. *Hardacre*, 1 Campb. 45.

The evidence is spread on the record, and we think it sustains the verdict.

*Per Curiam.*—The judgment is affirmed with 6 *per cent.* damages and costs.

*Z. Baird* and *R. C. Gregory*, for the plaintiffs.

*G. S. Orth*, *J. Pettit*, and *S. A. Huff*, for the defendants.